UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                            Case No. 2:19-pt-1
                                                  HON. JANET T. NEFF

v.

JOHN LARSON,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

        Defendant John Larson is serving a term of five years supervised release. The U.S. Probation Office filed a petition requesting that the Court add the following three conditions to his supervised release: (1) no contact with minors without written approval by Probation and must refrain from visiting areas where children frequently congregate; (2) residence and employment must be pre-approved by Probation; (3) must participate in a program of mental health treatment. (ECF No. 8.) Pursuant to Fed. R. Crim. P. 32.1(c), the undersigned held a hearing on the petition on October 3, 2019, which was continued on October 22, 2019. For the reasons stated below, the undersigned respectfully recommends that the Court deny the petition.

        In 2004, Defendant was convicted in Michigan state court of a sexual abuse offense involving his four-year-old niece. He was sixteen years old at the time of the offense.[1] In 2006, Defendant was convicted in the Western District of Michigan of a sexual abuse offense involving a fifteen-year-old. He was twenty years old at the time of that offense. Following his term of imprisonment, Defendant successfully completed a two-year term of supervised release and was discharged on August 4, 2012.

---

[1] The parties dispute whether this conviction was the result of sexual contact or sexual intercourse.

At the end of 2017, Defendant became homeless in Milwaukee, Wisconsin, and failed to comply with the Sex Offender Registration and Notification Act (SORNA). Defendant remained non-compliant with SORNA until June 13, 2018, when he registered with the Michigan Sex Offender Registry Program. Around that time, Defendant began living in Powers, Michigan with his wife, Melissa Larson; his five-year-old son and two-year-old daughter; and his wife's fifteen-year-old daughter and eight-year-old son.[2] Although he was now compliant with SORNA, Defendant was arrested on an Indictment in the Eastern District of Wisconsin on September 28, 2018, for failing to register as a sex offender. After he was released on bond, Defendant returned home to his family in Powers, Michigan. The bond permitted the Defendant to live in the family home with the children.

On December 10, 2018, Defendant pled guilty to Failure to Register as a Sex Offender in violation of 18 U.S.C. § 2250(a). On March 19, 2019, U.S. District Judge J.P. Stadtmueller sentenced Defendant to time served and a five-year term of supervised release. As part of his sentence, Judge Stadtmueller imposed fifteen conditions of supervised release, but also included in the judgment that he withheld the imposition of any additional conditions of supervised release because "such additional conditions, if any, are best left for further consideration at such time as the defendant may become eligible for release from the custodial portion of the Court's sentence." (ECF No. 4-3, PageID.58.)  Defendant was permitted to live at his family home with the children.

After he was released, Defendant returned home to Powers, Michigan, with his wife, his two children, and his two stepchildren. On May 22, 2019, this Court accepted jurisdiction of Defendant's supervised release. In early June 2019, the Court added two additional conditions

---

[2] Defendant's wife also adopted a third child, but that child does not live in the same home.

of supervised release after Defendant waived his right to a hearing and right to counsel. The first added condition required Defendant to participate in a sex offender assessment and/or treatment, which included the possibility of taking a polygraph test. The second added condition permitted the probation officer to search Defendant and his property, house, residence, vehicles, papers, computers, and electronic devices. Shortly thereafter, Defendant took—and passed—his first polygraph test, which focused on whether Defendant had any other reported or unreported sex offenses in his past besides the 2004 and 2006 offenses. He did not.

There did not appear to be any problems until a series of events that occurred beginning in August 2019. On August 14, 2019, a probation officer met with Defendant's wife at their residence. During this meeting, the probation officer discussed Defendant's past convictions and came to believe that Defendant was minimizing his past offenses to his wife. Defendant's wife then asked the probation officer whether several of Defendant's acts were "appropriate" considering his status as a sex offender. The "concerning" acts included Defendant: (1) throwing a female adolescent in a pool at a family gathering; (2) picking up and driving a friend of the fifteen-year-old stepdaughter to their residence; (3) consoling the fifteen-year-old stepdaughter at a funeral; and (4) allowing the fifteen-year-old stepdaughter to rest her head on his shoulder as they watched television on one occasion. The probation officer discussed establishing boundaries and a safety-plan to assure that Defendant was not in a "high-risk" situation. At this point, Defendant arrived at the residence. The probation officer confronted him about the "concerning" acts and Defendant denied that he did anything wrong. Instead, Defendant stated that his behavior was "just his way of being a father-figure." The probation officer then discussed with Defendant that he needed to have boundaries with the children.

The next day, Defendant completed a sex offender assessment at Great Lakes Recovery Center. Some of the results were apparently skewed because the tests do not readily apply to a failure to register offense. But following the test, the clinician stated, "There were no indications in the information provided by [Defendant] of current deviant sexual interest nor imminent risk of re-offense." (ECF No. 8, PageID.82.) Instead, the clinician suspected that Defendant would be more likely to have issues related to maintaining his sex offender registration.

On August 28, 2019, Defendant called his probation officer to report that a Child Protective Services Report had been made against him. The next day, another probation officer learned that the report was made by Defendant's wife's aunt and uncle because they recently discovered that Defendant was a registered sex offender. Because of the report, a probation officer explained to Defendant that he could not be in contact with his stepdaughter. But Defendant continued to deny that he did anything wrong and agreed to sit for another polygraph test.

On September 6, 2019, a probation officer met with the biological father of Defendant's stepdaughter. The father expressed concerns that the stepdaughter and Defendant said that they "loved" each other, and that the stepdaughter wanted to be at that residence. On the same date, a probation officer met again with Defendant's wife. Defendant's wife again expressed concerns about some of Defendant's past behaviors. She also indicated that she was uncomfortable with being responsible for the potential risk to the children.  At this time, there was a custody dispute brewing between Defendant's wife and her ex-husband.

Following these conversations, Probation determined that Defendant presented a risk to children and decided to order Defendant to leave the marital home. Although Probation believed that it had the authority to force Defendant to leave his marital home, it did not believe that it had the authority to separate Defendant from his two biological children. Thus, on a Friday

night, Defendant was forced to move out of his marital home and into a small hotel room with his two minor children.  Because Defendant's wife had custody of her other two children, the action of probation forbid Defendant from living with his spouse.

On September 9, 2019, the U.S. Probation Office filed this petition requesting to add the following three conditions:

> 18. You must have no contact with minors (under the age of 18) without the written approval of the probation officer and must refrain from entering into any area where children frequently congregate including, but not limited to parks, schools, day care centers, playgrounds, theme parks, theaters, and playgrounds.
>
> 19. Your residence and employment must be pre-approved by the probation officer.
>
> 20. You must participate in a program of mental health treatment, as directed by the probation officer, and follow the rules and regulations of that program until such time as you are released from the program by the probation officer, and must pay at least a portion of the cost according to your ability, as determined by the probation officer.

(ECF No. 8, PageID.80-81.)

Defendant subsequently took another polygraph test. He passed on two of the questions but there was "some deception" when Defendant answered "no" to whether he masturbated to sexual fantasies involving minors in the residence and whether he had sexual contact with any minors. Defendant explained that he had hemorrhoids and that the deception may have been caused by his movement due to his discomfort. Defendant subsequently took two additional polygraph tests focusing on the same two questions and there was no deception found.

Under 18 U.S.C. § 3583(e)(2), a court "may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release[.]" *See United States v. Lowenstein*, 108 F.3d 80, 84 (6th Cir. 1997).  The Court

has discretion to modify the terms of supervised release so long as they are "reasonably related to the goals of rehabilitation of the defendant and the protection of the public." *Lowenstein*, 108 F.3d at 85 (citing *United States v. Berridge*, 74 F.3d 113, 118 (6th Cir. 1996)).

The undersigned will address each of the proposed supervised release conditions separately. The first proposed condition requires Defendant to have no contact with minors without prior written approval by Probation and refrain from entering any area where children frequently congregate. According to Probation, the main reason for this proposed condition is to protect the public.

As the Sixth Circuit has recognized, 18 U.S.C. § 3583(e)(2) and Fed. R. Crim. P. 32.1(b) "are intended to allow courts to respond flexibly to unforeseen changes in the circumstances of a defendant[.]" *Lowenstein*, 108 F.3d at 85. So what changed in this case? At the time of sentencing in the Eastern District of Wisconsin, the district judge was aware of Defendant's living situation. The magistrate judge permitted Defendant to return to Powers, Michigan, while he was on bond. And the presentence report detailed that, since May 2018, Defendant lived in the same home in Powers, Michigan with his two biological children, his wife, and his wife's two children. The presentence report also included information on Defendant's past sex offense convictions. Despite knowing both his sex offense history and his living situation, the district judge elected not to impose any conditions of supervised release related to Defendant's contact with minors, including his own children.

Although the probation officer testified that there were several "concerning" allegations that he considered to be "grooming" behaviors, these allegations seem to be quite innocent. For example, one would expect a stepfather to "console" his stepdaughter at a funeral. Similarly, one would expect that a stepfather and stepdaughter to say that they love one another.

In fact, the probation officer conceded that the main reason for this proposed condition is based on Defendant's two past convictions of "hands-on" sex offense. But these offenses occurred over twelve years ago. Defendant finished serving those sentences in 2012. The district judge knew of those offenses and did not restrict Defendant's contact with minors. And, as confirmed by Defendant's polygraph tests, there have been no allegations that Defendant has engaged in any other reported or unreported sexual offense other than his two prior convictions.

In addition, this proposed condition would require Defendant to obtain written approval to have contact with his own children, of whom he now has sole custody. "[T]he interest of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by [the Supreme] Court." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). "Special conditions of supervised release that implicate parental rights are considered more intrusive and require explicit consideration by the sentencing court." *United States v. Widmer*, 785 F.3d 200, 207 (6th Cir. 2015). Even assuming that Probation allows Defendant to have contact with his own children, he would not be able to take them to a park, a movie, or even drop them off at school without the written permission of his probation officer. The proposed condition would significantly impact the way that Defendant, as a single parent, raises his children.

> Starting with *Meyer* and *Pierce,* the Court has held that "the Constitution protects the sanctity of the family precisely because the institution of the family is deeply rooted in this Nation's history and tradition." . . .   In fact, any regulation that affects the ability to form, maintain, dissolve, or resolve conflicts within a family is subject to rigorous judicial scrutiny.
>
> There is also a constitutional right to live together as a family, and this right is not limited to the nuclear family. Thus, a neighborhood that is zoned for single-family occupancy, and that defines "family" so as to prevent a grandmother from caring for two grandchildren of different children, was found to violate the Due Process Clause.

> And the concept of "family" may extend beyond the biological relationship to the situation of foster families, although the Court has acknowledged that such a claim raises complex and novel questions, and that the liberty interests may be limited. On the other hand, the Court has held that the presumption of legitimacy accorded to a child born to a married woman living with her husband is valid even to defeat the right of the child's biological father to establish paternity and visitation rights.

Legal Information Institute, https://www.law.cornell.edu/constitution-conan/amendment-14/section-1/family-relationships (internal citations omitted.)

In the opinion of the undersigned, the first proposed condition is not warranted and not "reasonably related to the goals of rehabilitation of the defendant and the protection of the public." *Lowenstein*, 108 F.3d at 85.

The second proposed condition requires probation to "pre-approve" Defendant's residence and employment. The current conditions include:

> 6. The defendant must reside at a residence approved by his supervising probation officer.
>
> 7. The defendant shall use his best efforts to secure lawful full-time employment and support his dependents.
>
> 8. The defendant shall notify his supervising probation officer at least ten days prior to any change in the place of his residence or employment. When such notification is not possible, the defendant shall notify his supervising probation officer within 72 hours of the change.

(ECF No. 4-3, PageID.57.) During the hearings before the undersigned, the probation officer acknowledged that the proposed condition is essentially duplicative with respect to Defendant's residence. In addition, Probation has not put forth any justification for needing to preapprove Defendant's employment. Accordingly, the undersigned finds that the second proposed condition is unnecessary and not "reasonably related to the goals of rehabilitation of the defendant and the protection of the public." *Lowenstein*, 108 F.3d at 85

The third proposed condition requires Defendant to participate in a program of mental health treatment. The current conditions require Defendant to participate in a Cognitive Intervention Program, (ECF No. 4-3, PageID.58) and participate in sex offender assessment and/or treatment (ECF No. 6, PageID.71). At the first hearing, the probation officer initially testified that this specific condition is needed to help resolve a contract issue and obtain the appropriate funding for Defendant's cognitive behavior therapy. However, at the second hearing, the probation officer testified that Defendant is already in sexual offender treatment that is addressing his need for cognitive behavior therapy. Thus, in the opinion of the undersigned, this condition is no longer necessary.

Finally, the undersigned feels compelled to comment on the troubling action taken by Probation in this case. It is concerning that Probation believed that it had the authority to interfere with Defendant's constitutional rights by ordering Defendant to leave his wife and his marital home and limit his contact with minors. The Article III judge that sentenced Defendant did not have any concern with Defendant's living situation. It also appears that the State did not have any concerns because it did not remove Defendant from the home following the CPS report. And Probation apparently did not have any concerns with Defendant's living situation for several months while he was on supervised release. Probation's decision to then assume the role of an Article III judge and make such a drastic order that separated a family is troubling.

"The greatest dangers to liberty lurk in insidious encroachment by men of zeal, well-meaning but without understanding." *Olmstead v. United States*, 277 U.S. 438, 479 (1928) (Brandeis, J., dissenting). Here, Probation—perhaps with good intentions—exceeded their authority when they ordered Defendant to immediately leave his family home without seeking

prior approval from an Article III federal judge[3]. But even assuming that Probation was legitimately concerned about the safety of children, one might question the wisdom of removing Defendant from his home where his wife was present with four children and forcing him to move into a small hotel room with his two minor children.[4]

Accordingly, the undersigned recommends that the petition to modify Defendant's conditions of supervised release be denied.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within 14 days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3. Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: November 15, 2019

                                         /s/ Timothy P. Greeley
                                        TIMOTHY P. GREELEY
                                         UNITED STATES MAGISTRATE JUDGE

---

[3] The undersigned is handling this matter on a Report and Recommendation. In my opinion, as an Article I judge, I do not have the authority to take the action that probation did in this case.

[4] The role of a U.S. Probation Officer is demanding and difficult. These officers often work long hours. Oftentimes they conduct their work in dangerous environments. They confront defendants in the field, not the courtroom where deputy marshals and court security officers provide protection. Probation officers must be flexible and resourceful in following their mission. I am grateful for the service that these probation officers have provided to me and the Court. The missteps in this case are an aberration.